Filed 6/5/26  In re L.C. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re L.C., a Person Coming Under the Juvenile Court Law. | |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES, Plaintiff and Respondent, v. L.C., Defendant and Appellant. | E086697 (Super.Ct.No. DPRI2500190) OPINION |

APPEAL from the Superior Court of Riverside County.  Malvina Ovanezova, Temporary Judge.  (Pursuant to Cal. Const., art VI, §21.)  Affirmed.

Law Offices of Vincent W Davis and Associates and Vincent W Davis for Defendant and Appellant.

Minh C. Tran, County Counsel, Jamila T. Purnell and Prabhath Shettigar, Deputy County Counsel for Plaintiff and Respondent.

1

Defendant and appellant L.C. (Father) appeals from the exit order of the juvenile court, which granted L.T. (Mother) sole physical and legal custody of their daughter, La.C. (born April 2016; Minor), and then dismissed the dependency proceedings. On appeal, Father contends (1) the jurisdictional findings under Welfare and Institutions Code[1] section 300, subdivisions (b) and (c), were not supported by substantial evidence; (2) the juvenile court erred by removing Minor from his care as the clear and convincing standard for removal was not met; (3) plaintiff and respondent Riverside County Department of Public Social Services (Department) failed to ensure he received visitation with Minor; (4) the juvenile court erred by ignoring the joint custody order entered in family law court; (5) the juvenile court erred when it failed to order reasonable visitation for him with Minor; (6) the juvenile court violated his due process rights; (7) res judicata and/or collateral estoppel barred the custody and visitation orders; and (8) the juvenile court erred by refusing to return Minor to his care based on Minor's preference to be with Mother.

**FACTUAL AND PROCEDURAL HISTORY**

A.     SECTION 300 PETITION

On April 21, 2025, the Department received a referral alleging emotional and physical abuse of nine-year-old Minor by Father. Minor reported that Father had spanked her. Father had called her stupid, weird, dumbass, retard and scary as fuck. He only let

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

2

her eat applesauce, yogurt and pudding because he said she was fat. Father spanked her whenever she cried.

A social worker made an unannounced visit to Minor's elementary school on April 22, 2025. She had no visible marks or bruises. Minor had allergies, which caused her to experience headaches and nosebleeds. She took medication for her allergies when she was staying with Mother. Minor reported that Mother and Father did not get along; he called Mother the " 'B-word and F-word.' " Minor denied any physical punishment from Mother. Father disciplined her by spanking her with an open hand on her buttocks over her clothes. Father had hit her with a belt when she was younger, leaving marks, but had not recently hit her with a belt. She was spanked as recently as April 20, 2025. Father had called Minor bitch, fuck, dumb and dumbass. She denied he called her stupid, weird or retarded.

Minor got very sad and mad at herself when her Father called her names. She had felt like she wanted to hurt herself while staying with Father, including while staying with him the prior weekend. She also reported wanting to throw herself off a bridge. She could not tell Father about wanting to hurt herself because he would get "really, really mad." Minor had talked to Mother about being fearful of Father, and Mother would just " 'sigh.' " Mother had talked to someone in "Court" about how Father disciplined her. Minor also reported that she was bullied at school because Father had her wear the same clothes to school every day. She wanted to change schools but Father would not let her.

3

Minor felt safe in Mother's home and she was given food. Minor believed that Mother was signing her up for therapy and she thought it would be beneficial if she could talk to someone about how she felt.

During this same time, a social worker made an unannounced visit to Father's home with an officer from the Menifee Police Department. Father reported having 50/50 custody of Minor. Minor visited his home every other weekend and spent half of the summer at his home. He denied ever calling her negative names or that he spanked her for crying. He had never withheld food from Minor or made comments that she was overweight. He refused to allow anyone in his home to conduct an assessment to ensure there were adequate provisions for Minor. He did not want Minor involved in counseling because he believed they " 'dig into things' " and he felt it was traumatizing for Minor.

Mother was interviewed in her home on April 23, 2025. She stated that Father was Minor's biological father. There were family law orders in effect, and she gave the social worker the case number. The most recent hearing in the family law case was on April 9, 2025. Mother confirmed that Minor stayed with Father every other weekend and every other week during the summer. Mother reported that Minor suffered with allergies and needed to take over-the-counter medication daily to mitigate headaches and nosebleeds. Father refused to give her the medications when Minor was staying with him. Minor had told Mother that Father had yelled at her, called her bad names, bullied her and was mean to her the last weekend she stayed with him. Minor also told Mother that Father had called Minor stupid, weird, dumb and dumbass. Minor also reported to Mother that Father had spanked her.

Mother stated that Minor was very "sensitive to name-calling" and "takes it seriously when someone calls her bad names." Minor also reported to Mother that another child of Father's, who resided in his home, bullied her. Minor had mentioned self-harm to Mother. Mother had signed Minor up for therapy at school, but Father had called the school and threatened to sue them, so they discontinued her therapy. Father refused to sign off on therapy for Minor and had fought mental health therapy for Minor in family law court.

Mother told the social worker that the family law orders issued on April 9, 2025, ordered that Minor be provided with therapy services for six sessions. Father was to be given three options for a therapist and was to choose one within 10 days. Father had responded after the social worker and Menifee police officer went to his home and gave Mother the name of the therapist he had chosen. The order also banned any corporal punishment in the home. However, Father had spanked Minor the prior weekend. Mother felt that she had no "recourse" in getting Minor the mental health services she needed and making visits with Father safer. She had expressed her concerns numerous times in family law court and insisted that they were ignored. Mother was not sure if Minor would return to Father's home the following weekend.

Father was interviewed on the phone. He expressed not wanting Minor to participate in mental health services—even though he was aware she had thoughts of self-harm—and that the family law court had "forced" it on him. The allegations in the referral were a "tactic" by Mother to get increased custody of Minor. Father denied ever spanking Minor the prior weekend, and any claim by Minor or Mother to the contrary

5

was "absurd." Mother had coached Minor to say she had been spanked by him. He believed the family law court orders may not be legal as " 'how can they tell me what to do in my own home?' " He refused to answer if he had firearms in the home.

On May 1, 2025, Mother called the Department and reported Minor had a breakdown about having to stay with Father on his weekend. Minor told Mother she felt "worthless" and "bullied" when staying with Father. Father also had not confirmed Minor's mental health appointments, and he did not want her attending therapy when she was with him. There were prior referrals in August, September and October 2024 that were unfounded or inconclusive for physical abuse by Father against Minor. There was also a report of emotional abuse, which was inconclusive and unfounded.

The Department was concerned that if Minor was allowed to go to Father's home she would engage in self-harm or suicide. Father had shown indifference to Minor's mental health issues and continued to use corporal punishment despite the family law order. The Department was requesting that Minor be removed from Father's care and remain placed with Mother. Father was given a resource packet on April 22, 2025, for parenting classes and mental health services. He denied that any services were needed for himself or Minor even if Minor was expressing thoughts of self-harm. The Department believed that Father would benefit from counseling, anger management and general parenting education. The Department recommended supervised visitation two times a week for one hour. A protective custody warrant was obtained for Minor on May 1, 2025.

The Department filed a section 300 petition (petition) for Minor and Father on May 5, 2025. It was alleged under failure to protect against Father under section 300, subdivision (b)(1), that (1) Father failed to recognize and address Minor's mental health needs. Minor described having symptoms of unresolved mental health, including suicidal ideations due to Father's treatment of her and being bullied at school. Father did not want Minor to participate in therapy because "they dig into things." Father had stated that even if Minor wanted to participate in mental health services, he would not allow her to participate; and (2) Father neglected the health, safety and well-being of the child in that he did not provide Minor with her allergy medication used to treat Minor's allergy-induced headaches and nosebleeds despite having medical documentation of Minor's medication needs. In addition, Father continued to use corporal punishment in his home despite the current family law order stating there was to be no corporal punishment used by either parent. It was alleged under section 300, subdivision (c), serious emotional damage, that Minor suffered from emotional abuse, in that she had thoughts of suicidal ideation. Minor disclosed wanting to hurt herself by throwing herself off a bridge, as well as having feelings of sadness and being mad at herself due to Father calling her inappropriate names such as "bitch, dumbass and dumb." In addition, Minor reported being fearful of Father due to his belt spanking her. Further, Father made her wear the same clothes from Friday to Monday, which caused her to be bullied at school.

The detention hearing was conducted on May 6, 2025. Minor's counsel asked for immediate counseling for Minor, and that visitation with Father be suspended with a finding by the juvenile court that visitation would be detrimental based on the allegations

in the petition that Father inflicted emotional abuse and trauma on Minor. Mother's counsel supported no visitation for Father. Father's counsel stated that Father vehemently denied the allegations. Father's counsel also stated, "[a]lthough this Court does have superior jurisdiction to the family law court at this time, upon the filing of this petition," the family law court had ordered 50/50 custody. Father's counsel stated that supervised visitation should be ordered as it would be an opportunity for healing between Father and Minor.

The juvenile court declared Father the presumed father. The juvenile court quashed the protective custody warrant. The juvenile court found a prima facie showing had been made that Minor came within section 300, subdivisions (b) and (c). Minor was ordered detained from Father based on the "substantial danger to the physical health of" Minor and that she may suffer "severe emotional damage." Minor would remain with Mother. The juvenile court ordered no visitation pending the next hearing as it found that visits would be detrimental based on the reports it had reviewed. It also authorized counseling services for Minor. The juvenile court noted that once counseling was set up for Minor, visitation could be increased. Father's counsel demanded a detention hearing.

A detention hearing was conducted on May 9, 2025. Father testified at the hearing. Father described the last weekend that Minor had a visit with him. Father picked up Minor at school on Friday afternoon. Minor was in a good mood when Father picked her up and they went out to dinner. They watched a movie and fell asleep. Minor got along with Father's other daughter, E.C., that weekend. They all went to an amusement park and had a great time. Minor never told him that she was upset during

8

the weekend. Minor had never told him that E.C. was being a bully to her. Father never deprived Minor of food and did not punish her that weekend. He had never made negative comments to her. He stated that a prior family law court order required him to return Minor to school in the same clothes but that order ended and he put her in his new clothes when he dropped her off that Monday. He was unaware that Minor was currently being bullied at school but was aware of a boy bullying her in the past.

Father noted that Minor suffered from allergies and he gave her over-the-counter medicine. He never withheld medication from Minor. He had distrust of the Department based on prior interactions and did not let them do a home assessment as he felt that they just looked for evidence to prove what they already believed. He insisted he was complying with the family law court order regarding counseling. He felt that the Department was asking for additional counseling than what was already ordered by the family law court, which he did not think was necessary. He was willing to abide by any juvenile court order for counseling.

Father admitted that, in the past, he would discipline Minor by spanking her but had not spanked her for two years; she was being encouraged by Mother to claim that he was spanking Minor. He "vehemently" denied that he physically disciplined Minor the last time she was at his house.

Father's counsel argued that there was no reason for Father to have physically disciplined Minor on the weekend, as they had a good time and there was no trauma. Based on Father's testimony, the Department, in its reports, gave a distorted and biased perspective of Minor's home and school life, her relationship with E.C., and her

relationship with Father. Father's counsel was seeking not to have Minor detained, and if she was detained, that he be granted unsupervised visitation.

The Department submitted on the detention report. Minor expressed feeling that she wanted to hurt herself when in the care of Father. She was unable to tell Father how she felt because Father would get mad at her. She felt safe in Mother's home. Father did not consent to counseling until ordered to do so by the family law court. There was a prima facie showing that Minor should be detained from Father. Further, the juvenile court had already found that visitation with Father was detrimental to Minor.

Minor's counsel asked that the juvenile court look at the detention report in its entirety, including numerous prior referrals involving Father calling Minor names and keeping her from mental health treatment. Minor's counsel argued that Minor's mental health was being affected by the abuse or neglect she was receiving in Father's home. Minor's statements in the detention report supported that Father was spanking her and depriving her of food.

The juvenile court noted that it had heard Father's testimony, had reviewed the detention report and considered the arguments of the parties. The juvenile court was concerned that Minor was indicating that she needed help. Even hearing about Minor's mental health struggles, Father still did not want Minor to participate in therapy. The juvenile court adopted its prior findings that detention was necessary, noting the decision was only temporary until the jurisdiction hearing. The juvenile court kept its order of no in-person visits but allowed supervised telephone visits.

10

B.   JURISDICTION/DISPOSITION REPORT

The Department filed its jurisdiction/disposition report on May 27, 2025.  The Department asked that the juvenile court find the allegations in the petition true by a preponderance of the evidence.  It recommended that the juvenile court terminate the case with juvenile custody orders giving Mother sole physical and legal custody of Minor.  Section 361, subdivision (c)(1), findings for removal of Minor from Father's care should be made.

On May 21, 2025, Father declined to provide a full interview based on a recommendation from his counsel.  No further family law orders were in place since the hearing on April 9, 2025.  The Department provided further information about the prior history with the family.  In a report for October 17, 2024, Minor stated that when she dropped something or did not eat her food, Father would make her go to her room and she could not come out the rest of day.  Father and his girlfriend would laugh at Minor for being dark-skinned.  She also reported that Father hit her with a belt to discipline her when she was six years old and recently spanked her with his hand.  She was scared to be with Father.  Father denied the allegations and no safety concerns were found.

A referral in August 2024 involved an allegation by Father that stepfather and Mother had engaged in domestic violence, which was unfounded.  In May 2023, it was reported that Father was hitting Minor with a belt.  Minor had reported bruises but, at the time of the report, there were none.  The allegation of physical abuse was inconclusive.  A referral in March 2022 was regarding the stepfather, which was unfounded.

11

As for the (b)(1) and (c)(1) allegations in the petition, Minor was asked on May 21 and 22, 2025, to tell the Department about her Father. Minor reported that E.C. had been kind to her and gave her snacks when Father was asleep. Father had called Minor a "Bitch" in early 2024; Minor immediately apologized for "cussing." Minor expressed that Father made comments about her " 'under his breath.' " He called her dumb or dumbass when she did things she was not supposed to do. These comments made her feel sad. She had learned not to cry in front of Father. She admitted previously wanting to hurt herself, including wanting to jump off a bridge. She felt this way when Father yelled at her or when he spanked her. She stated, " 'Everything bad I want to do is when he is mean to me.' " When asked if she ever told Father about how she felt, she responded, " 'Noooooooooo, he would get mad and say are you talking back to me?' " Minor was aware that Father had guns in his room.

Minor wanted to go to therapy. The last time she had been spanked by Father over her clothes on her buttocks was because she had accidentally spilled milk. She provided no further information. Minor did not feel safe in Father's home because he yelled at her and spanked her. Minor was taking medication at Mother's home but only at Father's home if she was "really sick."

Minor was in third grade and was doing well in school. Minor complained about being bullied at school. Mother was considering a change of schools. Minor had attended one therapy session. Minor had been seeing a counselor at her school but Father had ordered that the school discontinue the sessions in February 2025. Minor had an emergency room visit on March 3, 2025, complaining of chest pain. Minor expressed

12

that her heart was hurting and she could not be calmed.  She was diagnosed with anxiety.  Minor expressed she had the attack because of bullying by other children, and she was also thinking about Father.

Mother was also interviewed.  Minor had complained about being bullied as early as kindergarten and first grade.  Minor blamed being bullied on Father coming to the school on several occasions yelling and screaming and causing a scene.  Mother recommended to Father at the end of kindergarten that Minor could benefit from therapy.  Father denied that Minor needed therapy.  The school finally recommended that Minor participate in therapy and Mother agreed.

In early October 2024, Mother received notices from Minor's school that Minor was being sent to school without food, water and in the same clothing as the week prior.  Mother began meeting Minor at school on Monday mornings to provide her with any missing items.  One time, Father saw Mother meeting up with Minor at school.  Minor and Mother were walking together, holding hands.  Father, who had just dropped off Minor, yelled out his car, " 'let my fucking daughters hand go.' "  Father continued to yell at Mother with Minor present and yelled at several bystanders who tried to intervene.  At some point, Father grabbed Minor's arm.  Minor was taken to the office, hysterically crying.  After the incident, Minor expressed she was angry with Father and wanted to hurt herself.  After this Minor made several comments about not wanting "to be here anymore" and wanting to hurt herself to "see if he cares."

13

Mother believed that Minor was telling the truth about Father calling her names. Mother also believed that Father refused to give Minor allergy medication. Mother was concerned that Father would not comply with any court orders. Mother reported that Minor loved Father but struggled with enforcing boundaries when he mistreated her.

The Department concluded that, based on the statements and evidence, the juvenile court should find the petition allegations true by a preponderance of the evidence. It was necessary that Minor be placed outside the home of Father as he used derogatory terms in speaking with Minor. Father's abuse led to Minor feeling suicidal. Father had shown indifference to Minor's mental health. Minor did not want to have visits with Father. During the reporting period, there had been no communication between Father and Minor. The Department recommended the case be dismissed with orders granting sole custody to Mother.

On May 30, 2025, Father's counsel filed a "brief in opposition [to] requested jurisdic[ti]onal findings" (all caps omitted). Father's counsel contended the juvenile court was barred from entering any jurisdictional findings as the matter was res judicata. Father's counsel requested that the matter be dismissed and the parties referred back to family law court.

Father explained that Mother filed a request for order (RFO) in family law court on October 21, 2024, seeking sole physical and legal custody of Minor. Mother alleged in the RFO many of the same facts that were included in the jurisdiction/disposition and detention reports. The matter was sent to mediation. Mother, Father and Minor participated. Minor disclosed that she had been spanked by Father. A full hearing was

14

conducted on April 9, 2025.  The family law court, after considering the report of the mediator, found joint custody was appropriate.  The family law court did not refer the case to the Department based on the allegations by Minor.  Father alleged that Mother brought her allegations to juvenile court because she "did not 'get her way' " in family law court.  Father's counsel alleged that the juvenile court could only consider what had occurred since April 9, 2025, as the family law court had heard and tried the other allegations and found they were not significant.

Father attached the RFO filed by Mother.  Mother filed a declaration to support the RFO seeking sole custody of Minor.  Mother complained that Father's behavior had become erratic.  Mother stated that Minor had been physically harmed by Father at her school and was begging not to go back to Father's home.  She insisted that Father failed to provide Minor with food and water for school and dressed her in the same clothes.  Mother recounted the incident where Father yelled at Mother in front of Minor, grabbed Minor's arm, and Minor was hysterical.  She was able to get witnesses to provide statements about the incident and attached them to her declaration.  Mother was seeking a change in the custody orders and supervised visits for Minor and Father in the RFO.

Mother attached a letter written by Minor to Mother.  She begged not to be sent back to Father's house.  Other attachments to the RFO included witness statements about the incident at school; the Department's reports for prior involvement with the family; and the ruling by the family court on the RFO on April 9, 2025.  The ruling included that Father provide Minor with lunch and water on Mondays, that Minor participate in at least

15

six counseling sessions, neither parent was to use corporal punishment, and the parents were to choose two extracurricular activities for Minor to participate in.

On June 30, 2025, Father filed a brief in support of his request to dismiss the petition. Father argued that the juvenile court must give full faith and credit to the family law court findings. Father again argued that the issues were res judicata. Further, there was no current risk of harm as required by section 300. The allegations were over one year old; if there was no current risk of harm, the juvenile court had to dismiss without findings and orders.

The Department filed a response to the request to dismiss filed by Father. The Department noted that the family law orders were entered on April 9, 2025, awarding joint custody. A referral was received by the Department of emotional and physical abuse of Minor by Father on April 21, 2025. The Department determined that it was necessary to file the petition to protect Minor from Father. Once the petition was filed, the juvenile court had exclusive jurisdiction.

The Department recounted the facts in the detention and jurisdiction/disposition reports. It argued against res judicata, citing to cases that hold that the family law courts prior consideration of custody did not deprive the juvenile court of the right to make orders protecting a child. Once the petition was filed in this case, the juvenile court gained exclusive jurisdiction over the matters of child custody, visitation and parentage. Further none of the elements of res judicata—final judgment on the merits, same claim asserted in both matters, and privity—had been met. The family court was a distinct and separate entity from the dependency court and its judgment would not be considered a

16

final judgment as it applies to the dependency court. The Department also argued that there was a prima facie showing of current risk of harm to Minor.

The Department filed an addendum report on July 25, 2025. The recommendations remained the same. A social worker met with Minor on June 20, 2025. She had last spoken with Father on Father's Day. She was unsure about visiting him in person but was interested in talking to him. Mother supported her decision to talk to Father. Minor was seeing a therapist at least once each week. She had no suicidal ideations at the time. Minor would be attending a new school in August, which made her happy. Minor felt safe in Mother's home. Father did not agree to speak with the social worker without his attorney present.

Mother reported that Minor had not disclosed any further thoughts of self-harm or suicidal ideation since being in her care. A second meeting was held on July 20, 2025, with Minor and Mother. Minor was very energetic and playful during the conversation. She constantly laughed and smiled. Minor was excited about the extracurricular activities she was participating in, and she had fun at a summer camp. The Department noted that Minor was thriving in her environment and demonstrated "noticeable emotional and behavioral stability." She had a secure and supportive environment in Mother's home. Over the past several months, she expressed no suicidal ideation and showed no signs of emotional distress. The Department believed that Mother should be granted full legal and physical custody. Father had not engaged with the Department, and his current circumstances were unknown.

An amended petition was filed on July 30, 2025, to correct Mother's name (amended petition). The allegations remained the same.

C.      <u>JURISDICTION/DISPOSITION HEARING AND EXIT ORDER</u>

The jurisdiction/disposition hearing was conducted on July 30, 2025. The Department submitted on its reports and requested that the matter be terminated with the filing of juvenile court orders granting Mother sole physical and legal custody of Minor. Father would be allowed supervised telephone contact once each week. Minor's counsel submitted on the Department's recommendations. The juvenile court acknowledged it had read the briefs filed by Father.

Father's counsel again argued that the matter was res judicata and that there was no current risk of harm to Minor. Father's counsel argued there was a full hearing in family court and Mother did not like the result but the juvenile court should abide by those orders. The Department and Minor's counsel responded that many of the events that were alleged in the petition occurred after the family law court order.

Father's counsel responded that Mother needed to stop coaching Minor and filling "her head with negative things" about Father. Father's counsel began to recite what Mother said to Minor to cause her to have a breakdown. The juvenile court stopped Father's counsel, stating there was no foundation or personal knowledge of what Mother said to Minor when they were alone together. It was sufficient just to allege that Mother was coaching Minor.

18

The juvenile court first ruled the matter was not res judicata. "And the Court does have exclusive jurisdiction. And there are many courts where the same issue is litigated with different consequences." The requirements of res judicata were not met. Further, Mother did not file the petition, so it rejected that she was trying to obtain a different result. The juvenile court believed that part of the reason the petition was filed was because Father was not cooperative with the Department by refusing to allow a home assessment. The Department had to protect Minor. The juvenile court noted that after the order on April 9, 2025, ordering no corporal punishment, Minor reported that Father had spanked her. The juvenile court was also concerned that Minor had mentioned self-harm and Father did not want her to go to therapy.

The juvenile court found there was a current incident with Father, which showed there was a current risk of harm. There was a sufficient basis to detain Minor from Father. The juvenile court agreed with the recommendations by the Department but believed there should be supervised in-person visits between Father and Minor. The juvenile court found the allegations in the petition true by a preponderance of the evidence. There was clear and convincing evidence of the circumstances stated in section 361 regarding Father. The juvenile court ordered the case terminated, with sole physical and legal custody being awarded to Mother. There would be supervised telephonic contact once each week at a minimum. The juvenile court also ordered that Father had the option of supervised in-person visitation four hours each week. The juvenile court orders would be filed in family law court.

19

Father filed an appeal from the Custody Order—Juvenile—Final Judgment order filed on August 11, 2025, and the findings at the July 30, 2025, hearing.

**DISCUSSION**

A.  <u>JURISDICTION FINDINGS</u>

Father contends the juvenile court "lacked substantial evidence in making its' jurisdiction findings and orders." (All caps and boldface omitted.) Father claims the evidence did not support the allegations pursuant to section 300, subdivision (b) and (c), that Minor suffered or was at substantial risk that she would suffer because of his neglect or failure to protect.

"[S]ection 300, subdivision (b)(1), authorizes dependency jurisdiction where '[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of ... [¶] ... [¶] ... [t]he inability of the parent or guardian to provide regular care for the child.... Jurisdiction under section 300, subdivision (b), requires proof of (1) the specified parental condition or conduct (2) that has caused (3) 'serious physical harm or illness' or a 'substantial risk' of such harm or illness." (*In re L.W.* (2025) 109 Cal.App.5th 1012, 1019; see also *In re Cole L.* (2021) 70 Cal.App.5th 591, 601.) Section 300, subdivision (c), provides, in pertinent part, that jurisdiction may be assumed if, "[t]he child is suffering serious emotional damage, or is at substantial risk of suffering serious emotional damage, evidenced by severe anxiety, depression, withdrawal, or untoward aggressive behavior toward self or others, as a result of the conduct of the parent or guardian or who has no parent or guardian capable of providing appropriate care." (See also *In re D.B.* (2020) 48 Cal.App.5th 613, 620-621 [juvenile

20

court properly sustained dependency petition under section 300, subdivision (c), where the father's conduct caused his daughter to feel scared and anxious, to cry frequently, and to fear interacting with the father and the father lacked insight].)

The burden of proof at the jurisdictional hearing is a preponderance of the evidence. (*In re I.C.* (2018) 4 Cal.5th 869, 876; *In re B.H.* (2024) 103 Cal.App.5th 469, 479-480.) " ' "We review the juvenile court's jurisdictional findings for sufficiency of the evidence. [Citations.] We review the record to determine whether there is any substantial evidence to support the juvenile court's conclusions, and we resolve all conflicts and make all reasonable inferences from the evidence to uphold the court's orders, if possible. [Citation.] 'However, substantial evidence is not synonymous with any evidence. [Citations.] A decision supported by a mere scintilla of evidence need not be affirmed on appeal. [Citation.] Furthermore, "[w]hile substantial evidence may consist of inferences, such inferences must be 'a product of logic and reason' and 'must rest on the evidence' [citation]; *inferences that are the result of mere speculation or conjecture cannot support a finding* [citations]." [Citation.] "The ultimate test is whether it is reasonable for a trier of fact to make the ruling in question in light of the whole record." ' " ' " (*In re J.A.* (2020) 47 Cal.App.5th 1036, 1046.)

The petition alleged as to section 300, subdivision (b), that (1) Father failed to recognize and address Minor's mental health needs and did not want her to participate in therapy because "they dig into things." Minor's unresolved mental health issues included suicidal ideations due to Father's treatment of her and being bullied at school; and (2) Father neglected the health, safety and well-being of Minor in that he did not provide

21

her with her allergy medication used to treat her allergy-induced headaches and nosebleeds despite having medical documentation of her medication needs. In addition, Father continued to use corporal punishment in his home despite the family law order stating that corporal punishment was not to be used by either parent. As for section 300, subdivision (c), serious emotional damage, it was alleged that Minor suffered from emotional abuse in that she had thoughts of suicidal ideation and disclosed wanting to hurt herself by throwing herself off a bridge. She had feelings of sadness due to Father calling her inappropriate names such as "bitch, dumbass and dumb." In addition, Minor reported being fearful of Father due to his spanking her.

There is substantial evidence in the record to support the section 300, subdivision (b) and (c), allegations. It was first reported to the Department that Father had been calling Minor derogatory names and spanked her. He was also withholding food because he did not want her to be fat. On April 22, 2025, a social worker made an unannounced visit to Minor's school and spoke with her without Mother present. She reported that Father spanked her on April 20, 2025. He called her bitch and a dumbass. Based on her most recent visit with Father the prior weekend, she wanted to hurt herself and had contemplated throwing herself from a bridge. She wanted to attend therapy and change schools due to bullying, but Father had refused. At the same time, another social worker went to Father's home. He refused to allow the social worker into his home so the social worker could complete a home assessment. He also admitted to the social worker that he did not want Minor to participate in mental health treatment.

Minor had also reported that she never told Father how she was feeling because he would get mad. He did not give her medication for her allergies, and he had guns in the house. Minor had an anxiety attack on May 3, 2025. She blamed the anxiety attack on being bullied at school and because of Father.

These statements made by Minor supported the section 300, subdivision (b) and (c), allegations. Minor was suffering from suicidal ideation and self-harm based on Father calling her derogatory names, spanking her as a means of discipline and refusing to give her medication to treat nosebleeds and headaches. She had an anxiety attack and feared telling Father how she felt because he would be mad. She was at risk of serious harm based on Father's physical and emotional abuse, and his refusal to allow her to get help through therapy. The juvenile court properly found the allegations in the amended petition true by a preponderance of the evidence.

Father claims Mother manipulated Minor to change her statements. He contends that Minor told the mediator in the family law court that she was not injured by Father when he spanked her and that she ate well at Father's home. "The juvenile court's judgment is presumed to be correct, and it is appellant's burden to affirmatively show error. [Citation.] To demonstrate error, appellant must present meaningful legal analysis supported by citations to authority and citations to facts in the record that support the claim of error." (*In re S.C.* (2006) 138 Cal.App.4th 396, 408 (*S.C.*).) "[C]onclusory claims of error will fail." (*Ibid.*)

In Father's opening brief, he refers to mediation during which he claims Minor stated she had not been injured when Father spanked her and that she ate well in Father's home, which he claims is evidence that Mother coached Minor to change her story in juvenile court. Father cites to the clerk's transcript pages 144 through 203. We are not required to comb through these 50 pages to find this evidence (see *Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246), and any of the claims Father makes that Mother forced Minor to change her story after the family law court orders is not supported by Father properly citing to the record. Such failure to direct this court to the record citation waives the claim on appeal. (*Id*. at p. 1246 [" ' [i]f a party fails to support an argument with the necessary citations to the record, ... the argument [will be] deemed to have been waived' "].)

Father also claims that Mother was not credible. In following the Department's recommendations to grant full custody to Mother, the juvenile court necessarily found Mother and Minor to be credible and rejected Father's argument that Minor had been coached by Mother. "Weighing evidence, assessing credibility, and resolving conflicts in evidence and in the inferences to be drawn from evidence are the domain of the trial court, not the reviewing court." (*In re Alexis E.* (2009) 171 Cal.App.4th 438, 451.) The juvenile court reasonably relied on Minor's statements to support the jurisdictional findings. Substantial evidence supports the jurisdiction findings under section 300, subdivisions (b) and (c).

B.    REMOVAL OF MINOR FROM FATHER'S CUSTODY

Father contends the juvenile court erred by removing Minor from his care, as the clear and convincing standard for removal under section 361 was not met.

Section 361, subdivision (c)(1), provides that the juvenile court may remove a child from the custody of a parent if it finds, by clear and convincing evidence, "[t]here is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's ... physical custody."  The court must also determine "whether reasonable efforts were made to prevent or to eliminate the need for removal."  (§ 361, subd. (e).)  Accordingly, "[b]efore the court may order a child physically removed from his or her parents, it must find, by clear and convincing evidence, the child would be at substantial risk of harm if returned home and there are no reasonable means by which the child can be protected without removal."  (*In re Hailey T.* (2012) 212 Cal.App.4th 139, 145-146.)

"It is not required that the parent be dangerous or that the child have been harmed before removal is appropriate.  [Citation.]  'The focus of the statute is on averting harm to the child.' "  (*In re D.D.* (2019) 32 Cal.App.5th 985, 996.)  "A juvenile court's removal order at a disposition hearing will be affirmed on appeal if it is supported by substantial evidence."  (*In re V.L.* (2020) 54 Cal.App.5th 147, 154.)

We note the order granting sole custody to Mother and providing for supervised visitation and termination of the dependency amounted to an exit order governed by

25

section 362.4. "Section 362.4 authorizes a juvenile court to issue exit orders for visitation and custody when terminating dependency jurisdiction, and those orders remain in place even after jurisdiction is terminated." (*In re R.F.* (2021) 71 Cal.App.5th 459, 473.) "Section 361 findings are required at the disposition stage of dependency proceedings. The statute does not apply to custody and visitation determinations made at a section 364 review hearing concurrent with the termination of juvenile court jurisdiction." (*In re J.M.* (2023) 89 Cal.App.5th 95, 113 (*J.M.*).) "Section 362.4 does not require a finding of detriment under any circumstances; as a result, courts have applied the best interest standard in determining appropriate custody and visitation exit orders at this stage." (*Id.* at p. 113; see also *In re C.M.* (2019) 38 Cal.App.5th 101, 109 ["When a juvenile court makes custody and visitation orders, it does so ... guided by the totality of the circumstances in issuing orders that are in the child's best interests"].)

The hearing where the exit order was issued by the juvenile court was the jurisdiction/disposition hearing not a hearing under section 364. Regardless of the type of hearing, the juvenile court made specific findings as to the removal of Minor from Father's custody under section 361, subdivision (c)(1). Such findings were supported by the evidence, and it was in Minor's best interests to be removed from Father's custody.

Here, Father's emotional abuse caused Minor to express a desire to self-harm and caused her to have suicidal thoughts. Father refused to allow Minor to continue counseling at school and only acquiesced to counseling once the family law court ordered that she participate in six sessions. He also expressed that the family law orders may not be legal, asking how he could be told what to do in his own home. He also refused

26

access to his home for an assessment and it was reported that he owned guns. There was a history of reports from Minor that Father had inappropriately disciplined her, once by hitting her with a belt in May 2023, and that he spanked her in October 2024. Minor had an anxiety attack based partly on her concern about having to return to Father's care in May 2025. Minor was only doing better when she was in Mother's care. There were no other reasonable alternatives as Father did not believe that Minor should receive therapy, refused a home assessment and did not want to participate in services.

Based on the foregoing, the juvenile court could reasonably conclude that Minor faced substantial danger to her emotional well-being if returned to Father's care. (§ 361, subd. (c)(1).) Father again contends that Mother coached Minor into making these allegations. The juvenile court did not find this claim credible. There was clear and convincing evidence that removal of Minor from Father was necessary as she would be at substantial risk of harm if returned to his care; there are no reasonable means by which she could be protected without removal. It was in Minor's best interests to remove custody from Father.

C.     VISITATION

Father makes two claims regarding visitation with Minor. First, he claims the Department failed to ensure he received visitation with Minor. Specifically, he contends that visitation is a critical component of reunification and that the juvenile court can only deny visitation if it finds it would be detrimental to the child. Father argues that Mother filed "false allegations" of child abuse against Father and the Department "facilitated" her false allegations by filing the petition. Adverse to the family law order, which granted

27

50/50 custody, the Department "took away … father's equal parenting time, terminated his visits, and then reduced his visits to supervised."  Since the Department and Mother knowingly and intentionally denied Father visitation, what he argues is "the critical component of any reunification plan," the juvenile court's finding cannot stand.  Father's argument is not entirely clear.  Since Father's second argument addresses the visitation order made at the jurisdiction/disposition hearing, we assume Father is contending that the juvenile court erred by finding, prior to the jurisdiction/disposition hearing, that visits between Father and Minor were detrimental to Minor.

"As a general rule, an order terminating juvenile court jurisdiction renders an appeal from a previous order in the dependency proceedings moot....  'An issue is not moot if the purported error infects the outcome of subsequent proceedings.' "  (*In re C.C.* (2009) 172 Cal.App.4th 1481, 1488.)[2]  Prior to the jurisdiction/disposition hearing, the juvenile court suspended visitation based on a finding of detriment to Minor.  It later changed that order to allow supervised telephone calls.  In its exit order, it granted Father four hours of supervised visits each week.  There is no indication from Father how the finding that visits were detrimental in a prior proceeding impacted the exit order of the juvenile court.  He also fails to explain how the limited visitation afforded by the Department impacted the outcome of the case.  The claim that the Department did not

_____

[2]  We have not concluded that the jurisdictional findings and finding that removal of custody from Father was supported by clear and convincing evidence are moot, as it reasonably impacted the exit order.  (See *In re J.K.* (2009) 174 Cal.App.4th 1426, 1431-1432.)  Here, the suspension of visitation was not part of the exit order.

28

provide adequate visitation or that the juvenile court erred in suspending visits, finding them to be detrimental to Minor prior to the jurisdiction/disposition hearing is moot.

Even were we to consider the issue, the juvenile court determined that visits with Father in-person were detrimental, finding that visits posed a danger to Minor's physical and emotional well-being. Minor stated that Father had called her "fat," "dumb," and "dumbass," causing her to feel like she wanted to throw herself off a bridge. Father had recently spanked her. The finding by the juvenile court that visitation between Father and Minor was dangerous to Minor's emotional well-being was supported by substantial evidence.

Father titles his next claim of error regarding visitation as "the trial court erred when it failed to order reasonable visitation." (All caps and boldface omitted.) He then claims that it was in Minor's best interests for her parents to have joint legal and physical custody. Father relies on Family Code sections 3020 and 3100 to support his claim that the juvenile court's primary concern is to assure the child's health, safety and welfare. He concludes "the Court's ruling was in error and must be reversed." Father, in the reply brief, seems to be asking this court to grant him a reasonable visitation schedule to rebuild his relationship with Minor.

Again, it is not entirely clear what Father is arguing here. He seems to be arguing that he should be granted additional visitation but also seems to be attacking the juvenile court's exit order granting Mother sole custody of Minor.

"Dependency proceedings are governed by the Welfare and Institutions Code, rather than the Civil Code or the Family Code. [Citation.] When a juvenile court makes

29

custody and visitation orders, it does so pursuant to its authority under the Welfare and Institutions Code, guided by the totality of the circumstances in issuing orders that are in the child's best interests." (*In re C.M.*, *supra,* 38 Cal.App.5th at p. 109.) Section 362.4 states: "If the juvenile court terminates its jurisdiction over a minor who has been adjudged a dependent child of the juvenile court ..., the juvenile court on its own motion, may issue ... an order determining the custody of, or visitation with, the child." Hence, " '[w]hen the juvenile court terminates its jurisdiction over a dependent child, section 362.4 authorizes it to make custody and visitation orders that will be transferred to an existing family court file and remain in effect until modified or terminated by the superior court.' " (*In re Chantal S.* (1996) 13 Cal.4th 196, 203.)

" '[T]he juvenile court has broad discretion to make custody [and visitation] orders when it terminates jurisdiction in a dependency case [citation].' [Citation.] We review the juvenile court's exit orders for an abuse of that discretion." (*J.M.*, *supra*, 89 Cal.App.5th at pp. 112-113.)

The juvenile court made jurisdictional findings that Father posed a substantial risk of harm to Minor and found by clear and convincing evidence that Minor should be removed from Father's custody—orders which we have found were supported by substantial evidence. Based on this same evidence, the juvenile court reasonably concluded that it was in Minor's best interest to have Mother granted sole legal and physical custody. The juvenile court granted Father supervised visits for four hours each week despite such visits not being recommended by the Department. Father has not

30

shown that the juvenile court abused its discretion by making its custody and visitation order.

D.      FAMILY COURT ORDERS

Father contends the juvenile court "wholly ignored" the existing family law order and granted Mother's wishes to have sole custody of Minor, which was error and requires reversal.  As we previously stated, " 'When the juvenile court terminates its jurisdiction over a dependent child, section 362.4 authorizes it to make custody and visitation orders that will be transferred to an existing family court file and remain in effect until modified or terminated by the superior court.' " (*In re Chantal S.*, *supra,* 13 Cal.4th at p. 203.) The juvenile court has "broad discretion" to make exit orders.  (*J.M.*, *supra*, 89 Cal.App.5th at pp. 112-113.)

The juvenile court was not bound by the previous custody order issued by the family law court. The juvenile court properly determined that it was in Minor's best interest for Mother to have sole legal and physical custody based on Minor's statements that she was suffering due to Father's actions.  As previously stated, the juvenile court found Minor credible and we do not reassess that decision.  The juvenile court did not have to follow the order of the family law court.

E.      DUE PROCESS RIGHTS

Father contends the juvenile court violated his due process rights by failing to be a neutral decision maker.  He claims the juvenile court acted as an "advocate" for the Department when it failed to return Minor to the care and custody of Father.

Father has forfeited this claim by making conclusionary statements without citation to the record to support such claim. Father has the burden of showing error by presenting meaningful legal analysis with "citations to facts in the record that support the claim of error." (*S.C.*, *supra*, 138 Cal.App.4th at p. 408.)

Father simply claims by awarding Mother sole custody, the juvenile court was an advocate for her and colluded with her and the Department to deprive him of custody of Minor. We have exhaustively assessed the proceedings, which include the juvenile court reviewing the entirety of the evidence presented to it, and affording Father the right to present his evidence. Father makes no effort to pinpoint in the record how the juvenile court was an advocate for Mother, and where in the record it was clear the juvenile court was not a neutral decisionmaker. Father's failure to cite to authority for his claim waives the issue on appeal. (*Nwosu v. Uba*, *supra*, 122 Cal.App.4th at p. 1246.)

F.     RES JUDICATA AND COLLATERAL ESTOPPEL

Father claims the principles of res judicata and/or collateral estoppel barred the dependency matter. He insists that the current proceeding and the family law matter related to Minor's best interests relied on the same evidence, involved the same parties, and the family law matter was final and on its merits. The dependency proceeding should have been dismissed without any orders.

" 'The doctrine of res judicata gives certain conclusive effect to a former judgment in subsequent litigation involving the same controversy. It seeks to curtail multiple litigation causing vexation and expense to the parties and wasted effort and expense in judicial administration.' [Citation.] ... Under collateral estoppel, the litigation and

determination of an issue by final judgment is conclusive upon the parties or their privies in a subsequent suit on a different cause of action." (*In re Joshua J.* (1995) 39 Cal.App.4th 984, 992-993, italics omitted.)

However, "[p]rior consideration of the custody of a minor by a family law court cannot deprive a juvenile court of jurisdiction to make orders to protect the minor. [Citations.] The purposes and parties of family law and juvenile proceedings, while often overlapping, are not the same. The family law court adjudicates the rights of private parties vis-a-vis each other. The juvenile court takes into account the interest of the state." (*In re Benjamin D.* (1991) 227 Cal.App.3d 1464, 1469, fn. omitted.) "[A] juvenile court is not required to exclude evidence that may have already been presented in a family law forum." (*Ibid.*)

"[O]ur Supreme Court [has explained] that the 'issues' before the family law court and juvenile court can never, in fact, be 'identical,' even if some or all of the facts of abuse or neglect adduced in the two proceedings are the same, because of the important differences between the purposes and operations of the two courts, and the state's overriding concern for the protection of the children.' " (*In re Travis C.* (1991) 233 Cal.App.3d 492, 502, citing to *Dupes v. Superior Court* (1917) 176 Cal. 440, 441-442.) "[T]he actions of private parties ... , cannot defeat the obligations of the juvenile court. Indeed, where there is abject acrimony between the parents, the juvenile court, with its inclusion of the state as a litigant and it provisions for the appointment of counsel to represent the minor, is the best forum for consideration of issues concerning custody when the child comes within one of the descriptions contained in section 300. [Citation.]

[¶] ... The litigation of custody issues in family court does not estop the juvenile court from reconsidering factually identical issues." (*In re Desiree B.* (1992) 8 Cal.App.4th 286, 293.)

The dependency proceeding here was not barred by principles of collateral estoppel or res judicata. Initially, the juvenile court was presented with new evidence of abuse that occurred after the family law order. Minor reported that Father spanked her on April 20, 2025, after the family law order was issued on April 9, 2025, expressly prohibiting any type of corporal punishment. Minor also stated that after spending the weekend with Father, which was after the family law order, she had considered suicide and self-harm. This new evidence was properly considered in the dependency proceeding. Moreover, the juvenile court could consider the same evidence as the family law court in reaching its decision on custody and visitation. The dependency proceeding was not barred by principles of res judicata or collateral estoppel.

### G. MINOR'S PREFERENCE FOR PLACEMENT

Father's final claim is that the juvenile court erred by refusing to return Minor to his care based on Minor's preference that she be in the care of Mother. Father once again fails to cite to anything in the record to support that the decision to grant Mother sole physical and legal custody was based on a stated preference by Minor. Father's failure to provide "citations to facts in the record that support the claim of error," forfeits the claim on appeal. (*S.C.*, *supra*, 138 Cal.App.4th at p. 408.) Even if this court considered the claim, the juvenile court at the jurisdiction/disposition hearing stated that it was granting Mother sole physical custody based on its concern that Minor was at risk of substantial

34

harm if she remained in Father's custody.  The exit order was based on the totality of the circumstances and was decided based on Minor's best interests.

## DISPOSITION

The Custody Order—Juvenile—Final Judgment order filed on August 11, 2025, is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER
_____
Acting P. J.

We concur:

CODRINGTON
_____
J.

FIELDS
_____
J.

35